The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COOPER MOORE and ANDREW GILLETTE, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ROBINHOOD FINANCIAL LLC,<br><br>Defendant. | No. 2:21-cv-01571-BJR<br><br>DEFENDANT ROBINHOOD FINANCIAL LLC'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT<br><br>*Oral Argument Requested* |

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR)
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND......................................................... 2

    A.    Plaintiff Moore's Initial Complaint and Procedural Background. ........................ 2

    B.    Plaintiffs' Amended Complaint. ............................................................................ 3

III.  LEGAL STANDARD ........................................................................................................ 4

    A.    Rule 12(b)(6) Motion to Dismiss. .......................................................................... 4

    B.    The Commercial Electronic Mail Act. ................................................................... 4

IV.   ARGUMENT ..................................................................................................................... 5

    A.    Plaintiffs Do Not Allege Sufficient Facts that Robinhood "Substantially Assisted" in Transmitting the Text Messages Plaintiffs Received. ........................ 5

    B.    Plaintiffs Do Not Sufficiently Allege that Robinhood "Kn[ew] or Consciously Avoid[ed] Knowing" that the Senders of Referral Text Messages to Plaintiffs Violated or Intended to Violate the CPA. ........................................... 8

    C.    Plaintiffs' Factual Allegations Fail to Establish that the Text Messages at Issue Constitute "Commercial Electronic Text Messages." ................................ 10

    D.    Plaintiffs Should Not Be Given Further Leave to Amend. ................................. 14

V.    CONCLUSION................................................................................................................ 14

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT (2:21-cv-01571-BJR) - i
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

## I. INTRODUCTION

Plaintiffs Cooper Moore and Andrew Gillette (together, "Plaintiffs") bring suit against Defendant Robinhood Financial LLC ("Robinhood") over each allegedly receiving a single text message that invited them to "[j]oin Robinhood," a commission-free investment brokerage service, and that offered free stock should they do so. Plaintiffs do not allege that the text messages were sent by Robinhood; rather they admit that the text messages were sent by their own friends who happen to be Robinhood users. Plaintiffs do not and cannot allege that Robinhood controlled whether any particular Robinhood user might or might not have chosen to send through his or her own mobile device, to any of his or her own personal contacts, at a time of his or her choice, an invitation to "join Robinhood." Plaintiffs' allegations are insufficient to support their claims under (1) the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190.060; or (2) the Washington Consumer Protection Act ("CPA"), RCW ch. 19.86, predicated on a CEMA violation. Accordingly, Robinhood moves the Court to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6) with prejudice, for the following independent reasons:

*First*, Plaintiffs fail to plausibly allege that Robinhood provided "substantial assistance" to the Robinhood users who transmitted referral text messages to Plaintiffs. Instead, Plaintiffs merely parrot the elements of the statutory definition and fail to support their conclusory allegations with basic facts. Moreover, the Amended Complaint admits—as it must—that Robinhood users were solely responsible for deciding whether, when, to whom, and on what personal device to send the text messages.

*Second*, Plaintiffs also fail to plausibly allege that Robinhood provided "substantial assistance" to anyone it knew or consciously avoided knowing was violating the CPA. Robinhood may be liable for assisting in the transmission of a text only if it knew or avoided knowing the Robinhood users sent the text messages at issue *in violation of the CPA* as CEMA requires. *See* RCW 19.190.010(1). But Robinhood users cannot violate the CPA via a CEMA violation unless they themselves "conduct[] business in the state." RCW 19.190.060(1).

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 1
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

Plaintiffs' Amended Complaint attempts to hurdle this deficiency by asserting that any person that has any financial relationships within Washington State is "conducting business." This interpretation is overbroad, would render the requirement superfluous, and is contrary to the Washington Legislature's stated intent.

*Third*, the Amended Complaint fails to sufficiently allege that the text messages Plaintiffs received each constituted a "commercial electronic text message." CEMA limits the definition of such a message to those "sent to promote real property, goods, or services *for sale or lease*." RCW 19.190.010(3). Plaintiffs do not allege facts to sufficiently plead that the text messages they received were sent to promote the sale or lease of any real property, goods, or services, because an offer of free stock to sign up for Robinhood's commission-free investment service—untethered from any sale or lease of real property, goods, or services—cannot constitute a "commercial electronic text message" under CEMA.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff Moore's Initial Complaint and Procedural Background.

Plaintiff Cooper Moore filed his initial Complaint in the Northern District of California on August 9, 2021. Dkt. 1 ("Compl."). Moore alleged that Robinhood initiated and/or assisted in sending to him a refer-a-friend text message while he was a Washington resident. *Id.* ¶ 4. Moore admitted, however, that Robinhood's text referral program requires that the individual Robinhood user, not Robinhood, select the recipient of the text message "from the contacts stored *on the user's* phone" and to transmit the text message through the user's own mobile device. *Id.* ¶¶ 24, 27 ("the *user has to* . . . hit send") (emphasis added).

Robinhood filed a motion to dismiss Moore's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on September 16, 2021. Dkt. 21. Having reviewed Robinhood's motion to dismiss while it was pending, Moore notified Robinhood that he wished to file an amended complaint. The parties conferred and filed a stipulated motion to modify the initial case deadlines, which the Court granted on January 7, 2022. Dkts. 48, 49. On February 1, 2022, the parties stipulated to the filing of an Amended Complaint while reserving Robinhood's

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 2
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

defenses. Dkt. 52. The Court granted that stipulation on February 8, 2022. Dkt. 53.[1] Plaintiffs filed their Amended Complaint on February 9, 2022. Dkt. 54 ("FAC").

### B. Plaintiffs' Amended Complaint.

Plaintiffs' Amended Complaint adds a new Plaintiff—Gillette—and abandons one of Moore's two theories of liability—that Robinhood "initiated" the refer-a-friend text messages Plaintiffs allege that they received. *Compare* Compl. ¶¶ 4, 39, 41(a), 50 *with* FAC ¶¶ 4, 59, 61(a), 70. Plaintiffs' claims now rest entirely on their theory that Robinhood "assisted the transmission" of these text messages. *See* FAC ¶¶ 67-82.

Plaintiffs' new allegations focus primarily on the text message Gillette alleges he received, *id.* ¶¶ 50-58, the locations and employment status of the Robinhood customers who allegedly sent referral text messages to Plaintiffs, *id.* ¶¶ 48, 57, some of Robinhood's revenue sources, *id*. ¶¶ 1, 22, 25, 27, Robinhood's status as a for-profit business, *id.* ¶¶ 1, 23, details about the free stock provided to Robinhood customers upon a successful referral, *id.* ¶¶ 2, 23, 27, and Robinhood Gold, a premium service offered as a $5-per-month subscription service that is not mentioned at all in the text messages that Plaintiffs allege they received, *id.* ¶¶ 22, 24. The Amended Complaint adds no new factual allegations regarding the design and function of the Robinhood app or the process by which Robinhood customers can choose whether, when, and to whom to send referral text messages from their personal mobile devices—messages that they are free to edit just like any other text message. *Compare* Compl. ¶¶ 22-29, 31 (alleging the two methods by which Robinhood customers can send referral text messages), *with* FAC ¶¶ 30-37, 40 (the same, with non-substantive revisions). And, like the initial Complaint, Plaintiffs' Amended Complaint admits that Robinhood's app is free to download, FAC ¶ 1, does not allege that Robinhood customers pay Robinhood to set up a Robinhood account, and does not allege that the text messages Plaintiffs allegedly received contained any language about any product or service that requires a customer to pay anything to Robinhood.

---

[1] Robinhood files this Motion to Dismiss Plaintiffs' Amended Complaint in accordance with the deadlines imposed by the Court's January 9, 2022 order, Dkt. 49 at 3, and within fourteen days of the Court's order permitting Plaintiffs to file their Amended Complaint, Dkt. 53.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 3
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

### III.     LEGAL STANDARD

#### A.     Rule 12(b)(6) Motion to Dismiss.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).  Nor need the Court accept as true "legal conclusion[s] couched as a factual allegation." *Roth v. CNR Prods., Inc.*, 2020 WL 5747809, at *2 (W.D. Wash. Sept. 25, 2020) (Rothstein, J.) (quoting *Twombly*, 550 U.S. at 555). The Court may consider "materials incorporated into the complaint by reference." *Id.* (quoting *Abcarian v. Levine*, 972 F.3d 1019, 1022 (9th Cir. 2020)).  Furthermore, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Rahman v. Greenpoint Mortg. Funding, Inc.*, 2019 WL 3550314, at *2 (W.D. Wash. Aug. 5, 2019) (Rothstein, J.) (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998)).

#### B.     The Commercial Electronic Mail Act.

CEMA imposes liability for any "person conducting business in the state" who either (1) "initiate[s]" or (2) "assist[s] in" the "transmission of an electronic commercial text message" to a telephone number assigned to the cell phone or pager of a Washington resident.  RCW 19.190.060(1).[2]  CEMA does not provide a private right of action to seek damages for violation of its restrictions on commercial electronic text messaging. *See Wright v. Lyft, Inc.*, 189 Wn.2d 718, 727 (2017) ("RCW 19.190.040 does not create an independent cause of action for monetary damages under CEMA.").  Instead, a CEMA violation constitutes an "unfair or deceptive act in trade or commerce" for purposes of applying the CPA.  RCW 19.190.100; *see also Wright*, 189 Wn.2d at 727 ("CEMA's plain language demonstrates the legislature's intent that the recipient of

---

[2] Plaintiffs have abandoned the "initiation" theory. *See supra* § II.B.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 4
4863-4636-6988v.34 0114672-000005

unsolicited text messages bring a CPA claim.").

## IV.   ARGUMENT

Plaintiffs fail to allege facts sufficient to establish the elements of their sole remaining theory: that Robinhood violated CEMA by "assisting the transmission" of the text messages Plaintiffs allegedly received. Plaintiffs fail to adequately allege that: (i) Robinhood provided "*substantial* assistance or support" that enabled the senders to "formulate, compose, send, originate, initiate, or transmit" the refer-a-friend text messages, RCW 19.190.010(1) (emphasis added); (ii) Robinhood "kn[ew] or consciously avoid[ed] knowing" that the senders "engaged, or intend[ed] to engage, in any practice that violates the [CPA]," *id.*; *and* (iii) the text messages Plaintiffs received were "commercial electronic text messages," statutorily defined as text messages "sent to promote real property, goods, or services *for sale or lease*," RCW 19.190.010(3) (emphasis added).

### A.   Plaintiffs Do Not Allege Sufficient Facts that Robinhood "Substantially Assisted" in Transmitting the Text Messages Plaintiffs Received.

Plaintiffs' allegations regarding Robinhood's nominal involvement in sending the referral text messages they received are insufficient to state a claim of "substantial assistance" under CEMA. As a recent Eastern District of Washington decision confirmed, not every form of assistance rises to the level of "substantial assistance" required for liability under CEMA. *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *3 (E.D. Wash. Oct. 1, 2019) (dismissing complaint for failure to allege that defendant substantially assisted in transmission of text messages). In *Frank*, the court found that the defendant, Springbig, provided some assistance, "*i.e.* the software application used to send the text messages*" at issue, but that the plaintiff had failed to allege any facts showing it provided *substantial* assistance, "which is required by the statute." *Id*. Instructive here, the court in *Frank* also found no liability under the analogous Telephone Consumer Protection Act ("TCPA"), where "[t]here are no allegations that Defendant Springbig exercised *any discernible involvement* in deciding whether, when, or to whom the text

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT (2:21-cv-01571-BJR) - 5
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

message is sent, or what the text message said." *Id.* at *2 (emphasis added).[3]

*De la Cabada v. Ytel, Inc.*, 2020 WL 1156909 (N.D. Cal. Mar. 10, 2020), addressed TCPA "involvement" liability, similar to the "substantial assistance" requirement under CEMA. *Id.* at *4. The *De la Cabada* court first found that the defendant, Ytel, Inc., did not initiate the texts and calls at issue. *Id.* Then, in deciding whether Ytel was "*otherwise* so involved with a communication as to be deemed to have made them for TCPA liability purposes" (a standard similar to that of "assistance" liability under CEMA), the Court found that the plaintiffs asserted "no factual allegations that plausibly support an inference that Ytel created the content of the communications, or determined when, how, and to whom the communications were sent." *Id.* The Court noted that the FCC considered several factors in analyzing whether there is sufficient involvement in transmission for liability,[4] including: "(1) who creates the content of the messages; (2) who decides 'whether, when or to whom' a message is sent; (3) 'the extent to which a person willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking Caller ID, by offering either functionality to clients'; and (4) 'whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes.'" *Id.* (quoting *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7980-81 (2015) ("2015 FCC Order"), *abrogated in part on other grounds*, *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018)). In *Adzhikosyan v. Callfire, Inc.*, 2019 WL 7856759 (C.D. Cal. Nov. 20, 2019), another TCPA case, the court similarly considered whether the defendant "was so involved in placing the call[s] as to be deemed to have initiated [them]." *Id.* at *2 (quoting 2015 FCC Order at 7980). The court dismissed the plaintiff's claim because the plaintiff did not

---

[3] "Because the TCPA's prohibition against unsolicited communications advertising property, goods, or services is substantially similar to the CEMA prohibition, the Court applies the federal interpretations of the TCPA when considering this claim." *Wick v. Twilio Inc.*, 2017 WL 2964855, at *5 (W.D. Wash. July 12, 2017); *see also Gragg v. Orange Cab Co.*, 2013 WL 195466, at *4 n.4 (W.D. Wash. Jan. 17, 2013) ("interpretive rulings" of the TCPA "should be applied to [CEMA]").

[4] The Court also noted that "involvement" liability generally applies with respect to platforms that facilitate mass calling or texting. *Id.*

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT (2:21-cv-01571-BJR) - 6
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

allege that the defendant decided whether, when or to whom to send the messages at issue. *Id.*

Here, like in *Frank* and *Adzhikosyan*, Plaintiffs' allegations are insufficient to establish substantial assistance. *Frank*, 2019 WL 4855378, at *3; *see also Adzhikosyan*, 2019 WL 7856759, at *3. Plaintiffs admit that Robinhood had no discernable involvement in deciding whether, when, how, and to whom to send the text messages at issue. FAC ¶¶ 31-33. Rather, it was Robinhood users who made those decisions. And although Plaintiffs allege that Robinhood composed the initial draft content of the text messages, it was Robinhood users that had full control over the final content of the messages because the messages were editable and sent through the users' mobile devices' native text message applications. *Id.* ¶ 33.

Contrasting the facts of cases in which courts found involvement liability was sufficiently alleged with Plaintiffs' allegations further highlights their inadequacy. In *Wick*, the court upheld the sufficiency of a TCPA pleading where the plaintiff alleged that Twilio, a cloud-based texting service provider, created the uneditable messages ***and*** chose their order and timing, along with "what number a message will be sent from in order to prevent messages from being filtered or rejected." 2017 WL 2964855, at *4.[5] In *De la Cabada*, the court ultimately ruled that plaintiffs plausibly alleged that Ytel was sufficiently involved with sending the communications at issue because of allegations that Ytel assisted with spoofing telephone numbers and blocking Caller ID. 2020 WL 1156909, at *5. By contrast, Plaintiffs here allege no such involvement or "assistance" by Robinhood. They do not allege that Robinhood chose the order, timing, or sender of the text messages, or provided any other "functionality" that may have aided in "fraudulent spoofing" or the like.

The Amended Complaint, like Moore's initial Complaint before it, merely alleges— correctly—that Robinhood provided its users an opportunity to decide whether to share a chance to earn free stock with their own personal contacts. FAC ¶¶ 31-35 & n.10. And, if they so chose, whether to do so by email, text message, or other means through their own mobile device. *Id.* Robinhood's conduct is not substantial assistance under CEMA.

---

[5] Notably, the court in *Wick* twice dismissed the plaintiff's CEMA claim.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 7
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

### B. Plaintiffs Do Not Sufficiently Allege that Robinhood "Kn[ew] or Consciously Avoid[ed] Knowing" that the Senders of Referral Text Messages to Plaintiffs Violated or Intended to Violate the CPA.

Robinhood also cannot be liable for substantially assisting in the transmission of a text message because Plaintiffs do not allege that Robinhood "kn[ew] or consciously avoid[ed] knowing that the *initiator* of the . . . commercial electronic text message is engaged, or intends to engage, in any practice that violates the consumer protection act." RCW 19.190.010(1) (emphasis added). In other words, there can be no CEMA liability for "assisting the transmission" without the "initiator" either engaging in or intending to engage in a CEMA (or other CPA) violation. Furthermore, an "initiator" *must* be "conducting business" in Washington when he or she initiates a commercial electronic text message to violate CEMA. RCW 19.190.060(1). Here, Plaintiffs fail to allege facts demonstrating that Robinhood knew or consciously avoided knowing that the users who initiated the referral text messages were conducting business in Washington—an essential element to a claim that individuals sending referral text messages engaged in a practice that violated CEMA.

Plaintiffs' allegations that the text message senders "conduct[ed] business in Washington" all fail. *First*, they allege that the text message initiators conducted business by sending referral texts "in order to earn payments for themselves and the Washington-resident-recipients of those messages." FAC ¶ 28. In other words, Plaintiffs seek an expansive interpretation of "doing business in Washington" that depends on the subjective intent of a sender of a text message. While vastly overinclusive, as discussed below, this conjured standard is also irrelevant, as Plaintiffs include no allegations about the intent of those who sent the text messages. *See id.* ¶¶ 48-49, 57-58.

*Second*, Plaintiffs allege that all Robinhood users who live or work in Washington were "conducting business in Washington" at the time they sent the texts by virtue of "1) their own contractual relationship with Robinhood as Washington-resident Robinhood users; 2) their use of the Robinhood app to transact business with Robinhood as Washington-resident Robinhood users; 3) their engagement in other business relationships while residing in Washington,

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT (2:21-cv-01571-BJR) - 8
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
(206) 622-3150 main · (206) 757-7700 fax

including, for example, their own subscriptions to cellular telephone service, and 4) their own employment in the state of Washington." *Id.* ¶ 29. Plaintiffs allege that the person who sent Moore a referral text message was "conducting business" in Washington because she was "self-employed in Washington at the time she sent the text message" and was "a Robinhood user, using the app, and maintaining a phone number in the state." *Id.* ¶¶ 48-49; *see also id.* ¶¶ 57-58 (making similar allegations regarding the sender of the referral text message Gillette received).

The Court should reject these "legal conclusion[s] couched as . . . factual allegation[s]." *Roth*, 2020 WL 5747809, at *2 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs' interpretation of CEMA's "conducting business" requirement is vastly overbroad and would include nearly every Washington resident, subjecting them to CEMA "initiator" liability—and the accompanying statutory damages for a CEMA-based CPA claim—any time they send a text message to a friend or family member that speaks favorably of a product or service for sale or lease. This interpretation violates basic principles of statutory construction. Washington courts observe "the rule against surplusage, which requires this [C]ourt to avoid interpretations of a statute that would render superfluous a provision of the statute." *In re Est. of Mower*, 193 Wn. App. 706, 720 (2016) (quoting *Veit ex rel. Nelson v. Burlington N. Santa Fe Corp.*, 171 Wn.2d 88, 113 (2011)). By drawing in nearly every Washington resident, Plaintiffs' reading of CEMA would render CEMA's "conducting business" requirement superfluous. Moreover, accepting Plaintiffs' interpretation would render the statute unconstitutionally vague and overbroad, as it would "leave[] wide open the standard of responsibility, so that it is easily susceptible to improper application." *Gooding v. Wilson*, 405 U.S. 518, 528 (1972) (holding Georgia statute making it a crime to use language tending to cause a breach of the peace was unconstitutionally vague and overbroad).

Plaintiffs' interpretation also contradicts the legislative record, which shows that lawmakers intended CEMA to prohibit ***businesses*** in Washington from sending unsolicited text messages that market ***those businesses'*** products or services for sale. Committee materials and bill reports for House Bill 2007, which was codified as CEMA, repeatedly speak of prohibitions

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 9
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

against sending commercial electronic text messages "by businesses." *See, e.g.*, Final Bill Rep., S.H.B. 2007, at 2 (Wash. 2003) ("Commercial electronic text messages may not be sent ***by businesses*** in the state of Washington . . . .") (emphasis added);[6] H. Bill Rep., S.H.B. 2007, at 1 (Wash. 2003) (As Passed Legislature) ("Prohibits ***businesses in the state of Washington*** . . . ." (emphasis added)).[7] There is no basis to interpret the statute as Plaintiffs urge.

Plaintiffs do not and cannot allege that businesses in Washington sent them the text messages at issue. Therefore, Plaintiffs' allegations fail to show that the individual senders violated CEMA. *See* RCW 19.190.060(1) ("No person ***conducting business in the state*** may ***initiate*** . . . the transmission of an electronic commercial text message . . . .") (emphasis added). Absent allegations sufficient to show that the senders violated CEMA, Plaintiffs necessarily fail to allege that Robinhood had the requisite knowledge that those who Robinhood allegedly "assisted"—the senders—were "engaged, or intend[ing] to engage, in any practice that violates the [CPA]" through a CEMA violation. RCW 19.190.010(1). Accordingly, Plaintiffs' allegations fail to support a necessary element of their "assistance" CEMA claim against Robinhood.

### C. Plaintiffs' Factual Allegations Fail to Establish that the Text Messages at Issue Constitute "Commercial Electronic Text Messages."

Plaintiffs fail to state a claim for a third independent reason: The text messages Plaintiffs allegedly received were not "commercial electronic text messages," the only form of text message that CEMA prohibits. *See* FAC ¶¶ 45, 54; RCW 19.190.060(1). "Commercial electronic text message" is statutorily defined as "an electronic text message sent to promote real property, goods, or services ***for sale or lease***." RCW 19.190.010(3) (emphasis added).

The court's analysis in *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1128 (W.D. Wash. 2012) is instructive. In that case involving a claim under CEMA, the plaintiff allegedly received a text that stated "Get on Voxer" and provided the recipient a link to download

---

[6] Available at https://lawfilesext.leg.wa.gov/biennium/2003-04/Pdf/Bill%20Reports/House/2007-S.FBR.pdf?q=20220206154404.

[7] Available at https://lawfilesext.leg.wa.gov/biennium/2003-04/Pdf/Bill%20Reports/House/2007-S.HBR.pdf?q=20220208213548.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 10
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

"Voxer," a social networking app. *Id.* Like Robinhood, Voxer is a for-profit business. But the *Hickey* plaintiff "nowhere alleg[ed] that consumers pay money" to download or use the Voxer app. *Id.* at 1132. Dismissing plaintiff's CEMA claim, the court held that CEMA means what it says—a free app is not for "sale or lease." *Id.* at 1132-33. A sale, the court noted, requires the "passing of title from the seller to the buyer for" "*a price in money paid or promised*." *Id.* at 1132 (emphasis added) (quoting RCW 62A.2-106 & *Sale, Black's Law Dictionary* (9th ed. 2009)). That the transaction might involve some "intangible consideration" like "telephone data charges or agreement to pay . . . in the future" was irrelevant. *Id.*

Like the text messages in *Hickey*, the ones Plaintiffs allegedly received did not promote a product or service for sale or lease, and therefore were not "commercial electronic text messages" prohibited by CEMA. Plaintiffs allege that Moore received a text message stating: "Join Robinhood and we'll both get a stock like Apple, Ford, or Sprint *for free*." FAC ¶ 45 (emphasis added). Similarly, Plaintiffs allege that Gillette received a text message stating: "You now have a claim to a stock like Apple, Ford, or Facebook." *Id.* ¶ 54. Plaintiffs do not allege that Robinhood customers pay money to "join Robinhood" by creating an account. Nor do Plaintiffs allege that customers must provide "a price in money paid or promised" to trade commission-free using their Robinhood accounts. Indeed, Moore previously admitted that Robinhood's refer-a-friend text messages—including the text message that he alleges he received—promoted Robinhood's free mobile application and commission-free investment services. Dkt. 27 at 2 (conceding that Robinhood users "invest commission free in stocks, exchange-traded funds, and options" and that "Robinhood does not earn money from commissions").[8] The text messages do not promote a service or good for sale.

Nevertheless, Plaintiffs' Amended Complaint contains a number of new allegations aimed at hurdling the "for sale or lease" requirement. The allegations fail to do so. *First*,

---

[8] Moore's initial Complaint contained no allegations that consumers pay money for Robinhood's services, and instead alleged—correctly—that Robinhood users "invest commission free in stocks." Compl. ¶ 1. Plaintiffs' Amended Complaint conspicuously erases the words "commission free" from the same paragraph. *See* FAC ¶ 1. But the Amended Complaint still does not and cannot allege that Robinhood users must pay Robinhood anything in order to invest commission free.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 11
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

Plaintiffs now allege that Robinhood users "pay" for commission-free trading "by trading at inflated execution prices," even though customers do not pay Robinhood any money when conducting these trades. FAC ¶ 25. At the outset, this allegation does not describe a "sale or lease" because it does not cost money to download the Robinhood app or to claim a referral award. Regardless, Plaintiffs' theory is also incorrect because Robinhood's receipt of "payment for order flow" does not constitute a sale to its customers. Plaintiffs incorporate two Securities and Exchange Commission ("SEC") documents with sections pertaining to "payment for order flow" into their Amended Complaint to support these allegations, neither of which support a conclusion that the referral text messages at issue offered anything "for sale or lease." *Id.* n.7 (citing Robinhood Form S-1 (July 1, 2021) ("S-1")),[9] n.8 (citing Admin. Proceeding File No. 3-20171 (Dec. 17, 2020)) ("SEC Order").[10] The S-1, which Robinhood filed with the SEC, states that the majority of Robinhood Markets, Inc.'s revenue is transaction-based and includes "payment for order flow," meaning Robinhood Markets, Inc. receives "consideration in exchange for routing [its] users' equity, option and cryptocurrency orders to market makers for execution." S-1 at 10, 34. Notably, the "consideration" for these services is not paid by any customer using Robinhood's app, let alone recipients of referral text messages. Moreover, the S-1 Registration Statement is explicit that "[c]ustomers do not need to provide any cash consideration for the stock award" as a result of joining Robinhood via a referral. *Id* at 124.

The second document Plaintiff relies on is an SEC Order stating that "Robinhood, like other retail broker-dealers, has received payment for order flow in exchange for routing its customer orders to principal trading firms." SEC Order ¶ 11. Based on the SEC Order, Plaintiffs allege that Robinhood's practices "resulted in worse execution prices for Robinhood users—and for large trades the higher prices were higher than the commissions users would pay elsewhere." FAC ¶ 25. Although Plaintiffs admit that Robinhood "offers users trades without stated commissions," based on these supposedly inflated execution prices Plaintiffs allege that

---

[9] Available at https://www.sec.gov/Archives/edgar/data/1783879/000162828021013318/robinhoods-1.htm.

[10] Available at https://www.sec.gov/litigation/admin/2020/33-10906.pdf.

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT (2:21-cv-01571-BJR) - 12
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

Robinhood users "pay for Robinhood's 'commission-free' services." *Id*. The SEC Order does not support Plaintiffs' theory. The SEC did not find that any Robinhood customers paid "inflated" prices—i.e., prices higher than those quoted on the national public quotation feed (the "NBBO"). SEC Order ¶ 12. To the contrary, the SEC found only that "certain Robinhood orders" received less "price improvement"—the amount by which a price is *superior* to the NBBO price—from market makers than they might have at other broker-dealers. *Id.* ¶ 42. The SEC Order does nothing to undermine the fact that Robinhood customers—as Plaintiffs admit—trade commission-free. Moreover, as Plaintiffs also admit, these supposedly inflated execution prices are charged by "the principal trading firms" to which Robinhood sells its order flow, not by Robinhood. FAC ¶ 25. In any case, the fact that Robinhood generates downstream revenue due to its customers' commission-free trading does not render that commission-free trading a "sale" that Robinhood makes to its customers. *Hickey*, 887 F. Supp. 2d at 1132 (noting that a "sale" is "a price *in money* paid or promised") (emphasis added) (quoting RCW 62A.2-106 & *Sale, Black's Law Dictionary* (9th ed. 2009)).

*Second*, Plaintiffs allege that Robinhood offers an optional premium service, Robinhood Gold, that customers can access for $5 per month, and other services for additional fees, such as a $20 fee for delivering a check to a user. FAC ¶¶ 24, 26. However, Plaintiffs' own screenshots show that the text messages they allegedly received did not mention Robinhood Gold or any other optional product or service that required the recipient to pay Robinhood. *Id.* ¶¶ 45, 54. Although a court has held that a text message promoted services "for sale" where "the only purpose of the offer was to promote or encourage the use of defendants' [for-sale] taxi services," *Gragg*, 2013 WL 195466, at *3,[11] here that is not the case: the text messages at issue do not reference Robinhood Gold, and as Plaintiffs have admitted, no payment is required for customers to trade commission-free using their free Robinhood account and free Robinhood app.

*Third*, Plaintiffs make various additional allegations about Robinhood's customer base

---

[11] *See also Wright v. Lyft, Inc.*, 2016 WL 7971290, at *4 (W.D. Wash. Apr. 15, 2016) (relying on *Gragg* and holding under analogous facts that the only purpose of the text messages at issue were to sell the defendant's ride-sharing services to the text message recipients).

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED
COMPLAINT (2:21-cv-01571-BJR) - 13
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

and revenue generation, allegations which do nothing to show that *the text messages at issue* meet the "for sale or lease" requirement. For example, Plaintiffs allege that "[o]ver 80% of users that join the platform join through the refer-a-friend program," that "Robinhood's revenue would be adversely impacted" without new users generated through its referral program, and that "Robinhood also charges miscellaneous fees to users who use its trading services." FAC ¶¶ 22, 26. These allegations are insufficient to establish that the text messages Plaintiffs allegedly received promoted a product or service "for sale or lease." *See Hickey*, 887 F. Supp. 2d at 1132 (noting that "intangible consideration" like "telephone data charges or agreement to pay . . . in the future" does not satisfy the "for sale or lease" requirement).

### D.     Plaintiffs Should Not Be Given Further Leave to Amend.

The defects in Plaintiffs' claims cannot be cured by amendment, especially since Plaintiffs have amended once already after seeing Robinhood's initial motion to dismiss. Where "the claim is not based on a proper legal theory, the claim should be dismissed." *Rahman*, 2019 WL 3550314, at *2 (citing *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983)).

Here, Plaintiffs' legal theory is fatally flawed. *First*, Plaintiffs cannot remedy their failure to allege facts sufficient to state a viable claim that Robinhood provides "substantial assistance" to the senders of the refer-a-friend text messages Plaintiffs allegedly received, because they have now twice admitted that Robinhood users—not Robinhood—decided whether, when, how, and to whom to send the at-issue text messages. FAC ¶¶ 31-33. *Second*, Plaintiffs cannot remedy their failure to allege facts sufficient to establish that the original senders of refer-a-friend text messages were "conducting business" in Washington in connection with the text messages at issue. *Third*, Plaintiffs' admissions and allegations regarding the text messages at issue show that those text messages did not promote a product or service for sale or lease, and no volume of additional allegations regarding Robinhood's revenues or business model will change that.

### V.     CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint with

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 14
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

prejudice, and without leave to amend. Plaintiffs' CEMA claim is incurably flawed. Plaintiffs' CPA claim, which is premised on a CEMA violation, therefore also fails. Robinhood certifies that the parties have conferred pursuant to this Court's Standing Order for All Civil Cases. *See* Dkt. 44 at 3, 4.

DATED this 22nd day of February, 2022.

DAVIS WRIGHT TREMAINE LLP

By: *s/ Kenneth E. Payson*
   Kenneth E. Payson, WSBA #26369
   Email: kenpayson@dwt.com
   Lauren B. Rainwater, WSBA #43625
   Email: laurenrainwater@dwt.com
   Eric A. Franz, WSBA #52755
   Email: ericfranz@dwt.com
   920 Fifth Avenue, Suite 3300
   Seattle, Washington 98104-1610
   Telephone: (206) 622-3150
   Facsimile: (206) 757-7700

*Attorneys for Defendant*
*Robinhood Financial LLC*

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 15
4863-4636-6988v.34 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
(206) 622-3150 main · (206) 757-7700 fax