The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COOPER MOORE and ANDREW GILLETTE, on their own behalf and on behalf of others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>ROBINHOOD FINANCIAL LLC,<br><br>      Defendant. | No. 2:21-cv-01571-BJR<br><br>DEFENDANT ROBINHOOD FINANCIAL LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR)
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   ARGUMENT .................................................................................................................... 2

    A.   Plaintiffs Do Not Allege Sufficient Facts to Show that Robinhood "Substantially Assisted" in Transmitting the Text Messages that Plaintiffs Received. ............................................................................................................ 2

    B.   Plaintiffs Misinterpret CEMA's Knowledge Requirement and Fail to Allege that Robinhood Had the Requisite Knowledge that Robinhood Users Violated the CPA by Sending Referral Texts. ................................................................... 4

        1.   Robinhood Lacked Knowledge of the *Initiators*' CPA Violations............. 5

        2.   Plaintiffs Fail to Allege that the Robinhood Users Were Conducting Business in Washington When They Sent Text Messages to Plaintiffs. .... 6

    C.   Plaintiffs Did Not Receive Commercial Electronic Text Messages. ...................... 7

    D.   Plaintiffs Should Not Be Given Further Leave to Amend. .................................. 10

III.  CONCLUSION ............................................................................................................... 10

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - i
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

## I. INTRODUCTION

Plaintiffs do not dispute that the Robinhood users who allegedly sent them the text messages at issue had full control over whether, when, and to whom to send the editable text messages from the native text message applications on their personal mobile devices. Plaintiffs do not dispute that the original senders of the text messages at issue were not operating as businesses when sending the texts. And Plaintiffs do not dispute that the Robinhood app is free to download, that the text messages they received offered only free stock and an invitation to "join Robinhood," and that the Robinhood app offers commission-free trading. As explained below, these concessions alone are fatal to Plaintiffs' claims under Washington's Commercial Electronic Mail Act ("CEMA") and the Washington Consumer Protection Act ("CPA")—the latter predicated solely on an underlying CEMA violation.

*First*, Plaintiffs' concession that Robinhood users were solely responsible for deciding whether, when, and to whom to send editable text messages using the native text applications on their personal mobile devices means they cannot plausibly allege that Robinhood provided "substantial assistance" to the Robinhood users who transmitted referral texts to Plaintiffs.

*Second*, Plaintiffs fail to plausibly allege facts to show that Robinhood "[knew] or consciously avoid[ed] knowing that the initiator of the . . . commercial electronic text message [was] engaged, or intend[ed] to engage, in any practice that violates the consumer protection act." RCW 19.190.010(1). Robinhood users, whom Plaintiffs concede are not operating as businesses when sending the texts, cannot violate CEMA unless they themselves "conduct[] business in the state." RCW 19.190.060(1). The Court should reject Plaintiffs' attempt to hurdle this deficiency by arguing for strained CEMA interpretations that are inconsistent with CEMA's plain language and would render this requirement superfluous.

*Third*, Plaintiffs fail to dispute that the text messages at issue—which offered only free stock for joining Robinhood for free—cannot meet CEMA's plain-language definition of a "commercial electronic text message," defined as a message "sent to promote real property, goods, or services *for sale or lease*." RCW 19.190.010(3) (emphasis added). The Court should

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 1
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

reject Plaintiffs' attempt to create a new "commercial in nature" standard that is untethered from CEMA's plain "for sale or lease" language.

## II.     ARGUMENT

Plaintiffs' opposition to Robinhood's motion to dismiss relies on strained interpretations of CEMA that would render several CEMA elements superfluous. CEMA's status as a remedial statute is not an invitation to rewrite its plain language. *See Salts v. Estes*, 133 Wn.2d 160, 162 (1997) ("What the Legislature has not seen fit to do—change the wording of the statute—we decline to do by judicial proclamation in the guise of liberal construction."); *In re Dependency of E.M.*, 197 Wn.2d 492, 499 (2021) ("[I]f the plain meaning of the statute is unambiguous, we end our inquiry."). Plaintiffs' allegations are insufficient to state a claim under an appropriate reading of CEMA. The Amended Complaint should be dismissed.

### A.    Plaintiffs Do Not Allege Sufficient Facts to Show that Robinhood "Substantially Assisted" in Transmitting the Text Messages that Plaintiffs Received.

Plaintiffs do not allege sufficient facts to show that Robinhood "substantially assisted" in transmitting the text messages Plaintiffs received, as Plaintiffs do not dispute that the Robinhood users who sent Plaintiffs those texts had full control over whether, when, and to whom to send the editable text messages from the native text message applications on their personal mobile devices. CEMA requires Plaintiffs to plead allegations establishing that Robinhood provided "***substantial*** assistance or support." RCW 19.190.010(1) (emphasis added). Simply providing "some form of assistance" is not sufficient to meet this standard. *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *3 (E.D. Wash. Oct. 1, 2019). Nor does providing "the software application used to send the text messages" constitute "substantial assistance." *Id.*

Plaintiffs rely on *Wright v. Lyft, Inc.*, 2016 WL 7971290 (W.D. Wash. Apr. 15, 2016) ("*Wright I*"), to argue that their allegations "established a chain of events wherein Defendant 'assisted' with the transmission of an invitational text." Opp. at 8 (quoting *Wright I*, 2016 WL 7971290, at *4). But not just any "chain of events" rises to the level of substantial assistance. Unlike the referral texts Plaintiffs allegedly received, which are sent by Robinhood users, the

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 2
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

*Wright I* plaintiff alleged that the texts in that case "[were] sent by Lyft's computer systems; they [were] not sent through the user's telephone and cellular service carrier." Complaint ¶ 13, *Wright I*, 2014 WL 1379073 (W.D. Wash. 2014). Thus, the "chain of events" alleged in *Wright I* included Lyft actually sending the text messages at issue without users having any of the ultimate control over the text messages' contents that Robinhood users have via their native text message applications. *See* FAC ¶ 33 (alleging that "[o]nce the contacts to whom the message will be sent are selected, the user's native text messaging application opens . . . ."). That critical distinction, which is also emphasized in the case law cited in Robinhood's motion, shows why Robinhood did not provide substantial assistance. *See* Mot. at 6-7.

Plaintiffs argue that the FCC's factors Robinhood pointed to in its motion to determine whether liability exists for involvement in transmitting unlawful calls under the Telephone Consumer Protection Act ("TCPA") are inapplicable because CEMA, unlike the TCPA, includes an "assist the transmission" clause. Opp. at 9. However, in the absence of additional Washington case authority interpreting a given CEMA provision, Washington courts routinely look to FCC rulings interpreting the TCPA, regardless of the fact that the language of the two laws does not exactly match. *Wick v. Twilio Inc.*, 2017 WL 2964855, at *5 (W.D. Wash. July 12, 2017) ("Because the TCPA's prohibition against unsolicited communications advertising property, goods, or services is substantially similar to the CEMA prohibition, the Court applies the federal interpretations of the TCPA when considering this claim."); *see also Gragg v. Orange Cab Co.*, 2013 WL 195466, at *4 n.4 (W.D. Wash. Jan. 17, 2013).

The FCC factors used to evaluate TCPA "involvement" liability represent the most closely analogous standard available to the courts for guidance in determining the scope of "assist the transmission" liability under CEMA. *See De la Cabada v. Ytel, Inc.*, 2020 WL 1156909, at *3-4 (N.D. Cal. Mar. 10, 2020) (having determined that the defendant did not initiate the texts at issue, analyzing whether the defendant was "***otherwise*** so involved with a communication as to be deemed to have made it for TCPA liability purposes") (emphasis added) (citing *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 3
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

7961, 7980-81 (2015) ("2015 FCC Order"), *abrogated in part on other grounds*, *ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687 (D.C. Cir. 2018)).

Plaintiffs have alleged at best only a portion of one of the four factors that the FCC has used to evaluate "assistance" liability. *See* Mot. at 5-7. Plaintiffs allege that Robinhood (1) "creates the content of the messages," but concede that users have final say over the content. *See* FAC ¶ 33 (alleging that Robinhood referral text messages open in Robinhood users' native text message applications); Mot. at 7. Plaintiffs make no allegations that Robinhood (2) "decides 'whether, when or to whom' a message is sent," (3) "willfully enables fraudulent spoofing of telephone numbers or assists telemarketers in blocking Caller ID, by offering either functionality to clients," or (4) "knowingly allowed its client(s) to use [its] platform for unlawful purposes." Mot. at 5-6 (quoting 2015 FCC Order at 7980-81).

### B. Plaintiffs Misinterpret CEMA's Knowledge Requirement and Fail to Allege that Robinhood Had the Requisite Knowledge that Robinhood Users Violated the CPA by Sending Referral Texts.

Plaintiffs concede they must allege facts sufficient to establish that Robinhood knew or consciously avoided knowing that the Robinhood user who allegedly sent Plaintiff the referral text message engaged in a "practice that violates the consumer protection act" to survive a motion to dismiss. RCW 19.190.010(1). Plaintiffs also do not dispute that CEMA only prohibits "person[s] conducting business in the state" from "initiat[ing] or assist[ing] in the transmission of an electronic commercial text message . . . ." RCW 19.190.060(1). Thus, as set forth in Robinhood's Motion, Robinhood can be liable for "assisting in the transmission" of a text message only if: (1) Robinhood knew that its user who initiated the text was violating CEMA; a violation of which requires that (2) the Robinhood user was conducting business in Washington. Nonetheless, Plaintiffs argue for an alternative reading of CEMA that is inconsistent with CEMA's plain language and that violates the rule against surplusage. *See In re Est. of Mower*, 193 Wn. App. 706, 720 (2016) (courts should "avoid interpretations of a statute that would render superfluous a provision of the statute"); *see also* RCW 19.190.010(1), (7).

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 4
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

### 1. Robinhood Lacked Knowledge of the *Initiators'* CPA Violations.

Plaintiffs' allegations establish that Robinhood could not have known of any *initiator's* CPA violations, a required element to state a CEMA assistance claim against Robinhood. Plaintiffs, however, contend that "the statute contains no requirement" that a text initiator be engaged in a CPA violation to state a claim against a person who "assists" that initiator. *See* Opp. at 10, 12. Plaintiffs' reading ignores CEMA's express requirement that the assister must "know[] or consciously avoid[] knowing *that the initiator* of the commercial electronic mail message or the commercial electronic text message *is engaged,* or intends to engage, *in any practice that violates the consumer protection act*." RCW 19.190.010(1) (emphasis added). Plaintiffs effectively concede this argument by admitting that "CEMA further requires plaintiffs to allege that the initiators of the texts 'engage[], or intend[] to engage, in any practice that violates the CPA.'" Opp. at 10 (emphasis omitted) (quoting RCW 19.190.010(1)).

Plaintiffs argue in the alternative that initiators need only engage in the *assister's* alleged CEMA violations—not their own—to be "engaged" in "any practice that violates the consumer protection act." *See id.* at 10, 12. This circular interpretation is inconsistent with CEMA's plain language, which specifies that assisters must know of the *initiator's* CPA violation. RCW 19.190.010(1). Moreover, as any assister would already have knowledge of their own actions, Plaintiffs' interpretation would nullify the knowledge requirement for CEMA assistance claims. It would likewise nullify CEMA's "conducting business" requirement for initiators in all CEMA assistance claims. An assister can be liable under CEMA only if (1) it has the required knowledge that an initiator is violating the CPA—in this case via CEMA—a violation of which requires that (2) the initiator was "conducting business in the state." RCW 19.190.010(1); RCW 19.190.060(1). But Plaintiffs' interpretation, under which an assister need only have knowledge that an initiator "takes part" in the *assister's* alleged CPA violation, would impose CEMA assistance liability regardless of whether the initiator was "conducting business," contrary to CEMA's plain language. It would also create the absurd result of imposing liability for *assisting* in sending text messages when *sending the same text messages would not violate the law*.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 5
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

### 2. Plaintiffs Fail to Allege that the Robinhood Users Were Conducting Business in Washington When They Sent Text Messages to Plaintiffs.

Plaintiffs argue in the alternative that the initiators were in fact "conducting business in the state" "by virtue of their employment and other business activities in Washington" and therefore *were* engaged in a CPA violation of which Robinhood had knowledge. Opp. at 11. This nearly limitless interpretation of "conducting business" would subject nearly every Washington resident to CEMA "initiator" liability—and the accompanying statutory damages for a CEMA-based CPA claim—any time they send a text to a friend or family member that happens to speak favorably of a product or service for sale or lease. This overbroad interpretation runs counter to the plain language of the statute and legislative history, and would unconstitutionally impinge on free speech. *See* Mot. at 9 (citing *Gooding v. Wilson*, 405 U.S. 518, 528 (1972)).

Nor is the "conducting business" requirement merely a jurisdictional limitation, as Plaintiffs suggest. *See* Opp. at 12. The jurisdictional bounds are already provided by the words "in the state," which leaves "conducting business" with no effect under Plaintiffs' reading. CEMA's separate email-related prohibitions do not support Plaintiffs' interpretation. To violate CEMA under this separate provision, emails must be sent "from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident." RCW 19.190.020(1). The Legislature could have mirrored this language when it enacted CEMA's text-messaging restrictions by prohibiting text messages sent from a phone located in Washington or to a phone number that the sender knows, or has reason to know, is held by a Washington resident. It chose not to, and instead chose to include the "conducting business" requirement in its text message provisions. Accordingly, the distinct language in CEMA's email-related provisions undermines Plaintiffs' interpretation. *See Densley v. Dep't of Ret. Sys.*, 162 Wn.2d 210, 219 (2007) ("When the legislature uses two different terms in the same statute, courts presume the legislature intends the terms to have different meanings.") (citing *Koenig v. City of Des Moines*, 158 Wn.2d 173, 182 (2006)); *see also State v. Beaver*, 148 Wn.2d 338, 343 (2002). Plaintiffs' argument that the "conducting business" requirement should lack force because CEMA's email provisions do not contain a "conducting business"

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 6
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
(206) 622-3150 main · (206) 757-7700 fax

requirement is unavailing for the same reason. *See* Opp. at 11.

Plaintiffs attempt to save their interpretation by arguing that "[i]t would be counter to the intent of the CPA and CEMA if corporations conducting business in Washington, such as Robinhood, could violate the CEMA and CPA but escape liability simply by paying entities outside the state or individuals to send texts on their behalf." *Id.* at 10. Plaintiffs' hypothetical undermines their argument, as paying a ***business*** to send texts—thereby "conducting business in the state"—would imbue the alleged assister with knowledge that the ***initiator*** of commercial electronic text messages was engaged, or intended to engage, in conduct that violates CEMA (provided CEMA's remaining elements were met). Accordingly, the assister in Plaintiffs' example ***could*** be liable under CEMA's plain language.

Finally, Plaintiffs' argument that Robinhood users are "conducting business" in Washington because they sent the text messages at issue with the "intent" to receive stock fails because Plaintiffs' Amended Complaint does not include any allegations about the intent of the individuals who allegedly sent Plaintiffs the text messages they received. *See* FAC ¶¶ 48-49, 57-58. Further, Plaintiffs do not allege that those who allegedly sent text messages ***to Plaintiffs*** received free stock in exchange for sending those texts; Plaintiffs do not allege they signed up for Robinhood accounts, and therefore the senders would not have received any free stock.

At bottom, Plaintiffs effectively concede that the individuals who sent them the referral text messages at issue did not violate the CPA by doing so. Because the initiators did not violate the CPA, Robinhood necessarily could not have "know[n] or consciously avoid[ed] knowing that the initiator of . . . the commercial electronic text message is engaged, or intends to engage, in any practice that violates the consumer protection act" as RCW 19.190.010(1) requires.

### C. Plaintiffs Did Not Receive Commercial Electronic Text Messages.

Plaintiffs fail to show that text messages merely offering free stock to "join Robinhood" and that promote nothing "for sale or lease" are "commercial electronic text messages." Mot. at 10-14 (quoting RCW 19.190.010(3)). Plaintiffs argue that the text messages they received are "commercial in nature"; that, however, is not the language or standard found in CEMA. *See*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 7
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

Opp. at 12-13.  Plaintiffs assert that under this "commercial in nature" standard, a text message "need not solicit money, require payment, or even mention a service for which payment is required." *Id.* at 13.  Plaintiffs conjure their "commercial in nature" standard from a misreading of three cases, all of which involved text messages or calls sent to promote the sale of products or services by encouraging the recipients to pay money to the sender for those products and services.  *See Gragg*, 2013 WL 195466, at *4 ("[T]he only purpose of the offer" in the text message at issue "was to promote or encourage the use of defendants' taxi services," services that the defendant cab company offered to customers in exchange for money); *Wright I*, 2016 WL 7971290, at *5 (holding that the text message at issue was intended to promote the sale of Lyft's services—i.e., rides in exchange for money); *Chesbro v. Best Buy Stores, L.P*., 705 F.3d 913, 915-18 (9th Cir. 2012) (non-CEMA case in which the court held that calls promoted products for sale because the purpose of the calls was to encourage the called party to redeem Best Buy Reward Zone points, which required further purchases of Best Buy goods).

Plaintiffs' reliance on *Chesbro*—decided under the Washington Automatic Dialing and Announcing Device Act, RCW 80.36.400—is misplaced.  *See* Opp. at 2, 13, 14, 15.  Plaintiffs contend that under *Chesbro*, the text messages they received are commercial electronic text messages because they promote commission-free investing via the Robinhood platform.  *Id.* at 14.  Plaintiffs misread *Chesbro.*  In *Chesbro*, the implication that the text message from Best Buy urged a purchase of a good, product, or service was clear from the message itself.  *See Chesbro*, 705 F.3d at 918.  "Neither the statute nor the regulations require an explicit mention of a good, product, or service ***where the implication is clear from the context***." *Id.* (emphasis added).  The calls in *Chesbro* urged the plaintiff to "'redeem' his Reward Zone points" and "thanked him for 'shopping at Best Buy.'"  *Id*.  The Court explained:  "Redeeming Reward Zone points ***required going to a Best Buy store and making further purchases* of Best Buy's *goods*.  *There was no other use* for the Reward Zone points.**  Thus, the calls encouraged the listener to make future ***purchases*** at Best Buy."  *Id.* (emphasis added).  The "implication" *Chesbro* describes is the implication that the calls at issue had "no other use" but to promote "future purchases at Best

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 8
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
(206) 622-3150 main · (206) 757-7700 fax

Buy." *Id.*  Unlike the text messages in *Gragg* and *Wright I*, and the calls in *Chesbro*, there can be no implication that the referral text messages Plaintiffs allegedly received have "no other use" but to promote "future purchases" of Robinhood goods or services, because recipients can "join Robinhood" for free, use the app for free, and engage in commission-free trading without ever purchasing a product or service.

Plaintiffs' attempt to distinguish *Hickey v. Voxernet*—a much more analogous case—is unpersuasive.  Plaintiffs contend that *Hickey* is distinguishable because in *Hickey* the text message recipients had to provide "intangible" consideration in the form of their personal information, whereas to trade via Robinhood customers provide "tangible" consideration in the form of money that they invest.  Opp. at 15.  *Hickey* does not support this conclusion.  **First**, the "intangible" consideration *Hickey* spoke of was "personal information, telephone data charges or agreement to pay to use Voxer if it begins to charge users in the future," which includes potential uses of money that nevertheless do not constitute a "sale or lease."  *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1132-33 (W.D. Wash. 2012).  Like in *Hickey*, personal information is all that is required to "join Robinhood" by creating an account.[1]  **Second**, *Hickey* held that the text message promoted only a free app, and did not promote a product or service "for sale or lease." *Id.* at 1132 (quoting RCW 62A.2-106 & *Sale, Black's Law Dictionary* (9th ed. 2009)).  Indeed, *Wright I*—which Plaintiffs rely on—distinguished *Hickey* on the basis that the app and software at issue in *Hickey* were free to download and use, "i.e., there was no sale of a product or services to promote."  *Wright I*, 2016 WL 7971290, at *5.  The same is true here—the Robinhood app itself is free and can be used without the sale of a product or service.

Plaintiffs' remaining arguments regarding Robinhood Gold, Robinhood's revenue, and the percentage of Robinhood users that join Robinhood via a referral text message, are insufficient to show that the text messages at issue promoted "real property, goods, or services

---

[1] Plaintiffs assert that a person must sign up for Robinhood *and* link their bank account before receiving free stock. Opp. at 3.  Notably, Plaintiffs allege that this requirement went into effect in 2020, long after Plaintiff Cooper Moore allegedly received a Robinhood referral text message in March 2018.  *See* FAC ¶¶ 23, 44-45.  Regardless, linking a bank account to engage in commission-free trading does not render either of the two text messages at issue "commercial electronic text messages," because they do not promote a product or service "for sale or lease."

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 9
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

for sale or lease." The text messages at issue do not mention or refer to Robinhood Gold, which is not required to either "join Robinhood" or engage in commission-free trading. *See* FAC ¶¶ 45, 54. Nor does the fact that Robinhood generates downstream revenue due to its customers' commission-free trading render that commission-free trading a "sale" that Robinhood makes to its customers. *See Hickey*, 887 F. Supp. 2d at 1132; *see also Daniel v. Five Stars Loyalty, Inc.*, 2015 WL 7454260, at *4 (N.D. Cal. Nov. 24, 2015) (distinguishing *Chesbro* on the basis that a text message designed to allow the plaintiff to complete a registration process, "which could result in an increase in the chances of [the plaintiff] making future purchases," was insufficient to render that text a telemarketing message under the TCPA).[2]

### D.     Plaintiffs Should Not Be Given Further Leave to Amend.

The defects in Plaintiffs' allegations cannot be cured by further amendment. Plaintiffs cannot remedy their failure to allege facts sufficient to establish that Robinhood provides "substantial assistance" to the senders of the refer-a-friend text messages that they allegedly received. Even if they could, amendment would be futile because their claims also require factual allegations sufficient to establish that the original senders of refer-a-friend text messages are "conducting business in the state," which they cannot plausibly allege. Finally, Plaintiffs' claims fail because the refer-a-friend text messages that they allegedly received did not promote a product or service "for sale or lease." Because Plaintiffs' claims are "not based on a proper legal theory, the claim[s] should be dismissed" with prejudice. *See Rahman v. Greenpoint Mortg. Funding, Inc.*, 2019 WL 3550314, at *2 (W.D. Wash. Aug. 5, 2019).

### III.     CONCLUSION

Plaintiffs' CEMA claim is incurably flawed. Plaintiffs' CPA claim, which is premised on a CEMA violation, therefore also fails. For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

---

[2] Plaintiffs argue that applying CEMA's "for sale or lease" requirement as it stands—as opposed to Plaintiffs' unsupported "commercial in nature" standard—would exclude real estate agents, insurance brokers, and others who earn commissions. Opp. at 14. But hypothetical text messages from commission-based businesses promoting the sale of their services through commissions paid directly out of the purchase price of the product being sold differ from the Robinhood referral text messages Plaintiffs received, which did not promote *any* sale of *any* services.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 10
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax

1    DATED this 29th day of March, 2022.

                                    DAVIS WRIGHT TREMAINE LLP


                                    By: *s/ Kenneth E. Payson*
                                        Kenneth E. Payson, WSBA #26369
                                        Email: kenpayson@dwt.com
                                        Lauren B. Rainwater, WSBA #43625
                                        Email: laurenrainwater@dwt.com
                                        Eric A. Franz, WSBA #52755
                                        Email: ericfranz@dwt.com
                                        920 Fifth Avenue, Suite 3300
                                        Seattle, Washington 98104-1610
                                        Telephone: (206) 622-3150
                                        Facsimile: (206) 757-7700

                                    *Attorneys for Defendant*
                                    *Robinhood Financial LLC*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (2:21-cv-01571-BJR) - 11
4886-0222-9270v.30 0114672-000005

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
(206) 622-3150 main · (206) 757-7700 fax